1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   MICHAEL W. BAKER,                           CASE NO. SACV 11-00138-JST (PJWx)

12           Plaintiff,

13
     vs.
14                                               **ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANTS'**
15   MICHELE RODRIGUEZ; BRAD                     **MOTION TO DISMISS**
     CARRINGTON; T. JANSEN; DANNY
16   MOORHOUSE; SANDRA HUTCHENS,
     ORANGE COUNTY SHERIFF; ORANGE
17   COUNTY SHERIFF'S DEPARTMENT;
     COUNTY OF ORANGE; and DOES 1-10,
18   INCLUSIVE.

19

20           Defendants.

21

22

23

24

25

26

27

28

1

1         Before the Court is a Motion to Dismiss filed by Defendants County of Orange

2  ("County"), Orange County Sheriff's Department ("Sheriff's Department"), Sheriff Sandra

3  Hutchens, Sergeant Tim Jansen, Deputy Brad Carrington, and  Deputy Michele Rodriguez

4  ("individual Defendants") (collectively, "Defendants").  (Mot., Doc. 19.)  Defendants

5  move to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to set forth

6  allegations sufficient to support a claim.  (Id. at 2.)  Having reviewed the parties' papers

7  and heard oral argument, the Court GRANTS IN PART AND DENIES IN PART

8  Defendants' Motion.

9

10  **BACKGROUND**

11      Plaintiff asserts five claims against the moving Defendants[1]: (1) a claim under 42

12  U.S.C. § 1983 ("§ 1983") for violation of Plaintiff's Fourth and Fourteenth Amendment

13  rights, (2) a § 1983 claim for conspiracy to violate Plaintiff's Fourth and Fourteenth

14  Amendment rights, (3) a state law claim for false imprisonment, (4) a state law claim for

15  intentional infliction of emotional distress, and (5) a state law claim for negligent infliction

16  of emotional distress.

17      There is a common factual basis for all of Plaintiff's claims.  Plaintiff alleges that on

18  August 21, 2009, he entered the property located at 4 Bastia, Laguna Niguel, California

19  ("the Property") to seek assistance because his car would not start.  (FAC ¶¶ 13-14, 16.)

20  He alleges that he believed a friend's girlfriend lived at the Property (Id. at ¶ 15), but the

21  Property actually belonged to Defendant Danny Moorhouse ("Moorhouse"), who placed

22  Plaintiff under a citizen's arrest and called 911 (Id. at ¶¶ 12-13, 27.)   Allegedly, Plaintiff

23  told both Deputy Rodriguez and Moorhouse his reasons for entering the Property and

24  denied intent to commit a crime on the Property.  (Id. at ¶¶ 13-16.)   Nonetheless, he

25  alleges, Deputy Rodriguez accepted the citizen's arrest, handcuffed Plaintiff, and placed

26

27      [1] Plaintiff also asserts a separate false arrest claim only against Defendant Danny Moorhouse, who is not a moving Defendant here.

28

1  him in the back of her and Deputy Carrington's patrol car. (Id. at ¶ 17.)  The Deputies then

2  transported Plaintiff to his car, where they tried to start his vehicle and confirmed that it

3  would not start.  (Id. at ¶¶ 20-21.)  The Deputies subsequently conducted a search of

4  Plaintiff's car (Id. at ¶ 22), then Deputy Rodriguez re-arrested Plaintiff and transported him

5  to the Orange County Jail.[2]  (Id. at ¶¶ 22, 24.)

6       Plaintiff further alleges that an audio/video camera located on the patrol vehicle

7  captured Plaintiff's conversations with Deputies Rodriguez and Carrington regarding his

8  car and the recording confirmed that a Deputy attempted to start his car but it would not

9  start.  (Id. at ¶¶ 20-21.)  Nonetheless, Plaintiff alleges, the police report written by Deputy

10  Rodriguez and approved by Deputy Carrington did not list the audio/video recording or

11  Moorhouse's 911 call.  (Id. at ¶¶ 25, 27-28.)  This report was subsequently approved by

12  Sergeant Jansen, who was vested with the authority to approve police reports by Sheriff

13  Hutchens, on behalf of the County of Orange.  (Id. at ¶ 29.)  After Plaintiff was arrested

14  and booked at the Orange County Jail, he was charged with felony burglary and bail was

15  set at $50,000.  (Id. at ¶¶ 24, 26.)  Then, before his arraignment on August 24, 2009,

16  Plaintiff alleges Deputy Carrington executed a declaration in support of increasing bail to

17  $100,000.   (Id. at ¶ 32.)

18       Plaintiff alleges that, at a hearing in state court on September 4, 2009, Deputy

19  Rodriguez testified that no one from the Sheriff's Department had tried to start Plaintiff's

20  vehicle.  (Id. at ¶ 38.)  Subsequently, during Plaintiff's trial, Deputy Rodriguez testified

21  that no attempt was made to determine whether Plaintiff's car would start and then later

22  admitted that an audio/video recording of the events existed.  (Id. at ¶¶ 39-40.)  Plaintiff

23  alleges that as a result of Deputy Rodriguez's testimony, the audio/video recording was

24

25       [2] The FAC does not allege that Plaintiff was released from arrest while Deputies Carrington
     and Rodriguez attempted to start his car.  However, the inference from the allegation that he was
26   "again arrested" after a search of his car (FAC ¶ 24) combined with Plaintiff's admission in his
     Opposition that drugs were found in his car (Pl.'s Opp'n, Doc. 25, at 5) is that his re-arrest was at
27   least in part due to the discovery of drugs in his car.

28

3

1    produced by the prosecution.  (Id. at ¶ 42.)   Because the audio/video recording

2    corroborated Plaintiff's statements that his car would not start, Plaintiff alleges, the

3    prosecution moved to dismiss the burglary case against Plaintiff and the Court granted the

4    motion.  (Id. at ¶ 43.)  As of the time of dismissal, Plaintiff had allegedly spent nearly six

5    months incarcerated in the Orange County Jail.  (Id. at ¶ 44.)

6         The minutes of Plaintiff's criminal trial reflect that the prosecution dismissed the case

7    against Plaintiff as a result of the "new discovery" of the audio/video recording.  (Request

8    for Judicial Notice, "RJN," Doc. 21, Ex. A at 26.)[3]  At the same time the prosecution

9    dismissed the case, Plaintiff agreed to admit that there was probable cause for his arrest,

10   and formally admitted the same.  (Id.)  In his Opposition, however, Plaintiff states that this

11   admission is confusing because at the same time he was arrested for burglary, he was

12   arrested for a drug charge after drugs were found in his car.  (Pl.'s Opp'n., Doc. 25, at 5.)

13

14   **LEGAL STANDARD**

15        When evaluating a Rule 12(b)(6) motion, the Court must accept as true all

16   allegations of material facts that are in the complaint and must construe all inferences in

17   the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384

18   (9th Cir. 1994).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a

19   short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R.

20   Civ. P. 8(a)(2).  "Specific legal theories need not be pleaded so long as sufficient factual

21   averments show that the claimant may be entitled to some relief."  *Fontana v. Haskin*, 262

22   F.3d 871, 877 (9th Cir. 2001).  Dismissal of a complaint for failure to state a claim is not

23

24        [3] Defendants filed a request for judicial notice in support of their Motion, asking the Court to

25   take notice of the Certified Minutes in *People v. Baker*, Case No. 09SF0800 F A.  Defendants'
     request is GRANTED, as the contents of these documents are "not subject to reasonable dispute"

26   in that they are "capable of accurate and ready determination by resort to sources whose accuracy
     cannot reasonably be questioned."  Fed. R. Evid. 201.

27

28

1  proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible

2  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

3  plausibility when the plaintiff pleads factual content that allows the court to draw the

4  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

5  *Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "And, of course, a well-pleaded complaint may

6  proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and

7  that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation

8  marks and citation omitted).

9

10  **DISCUSSION**

11  **I.     § 1983 Claims**

12      Plaintiff alleges that Defendants violated his Fourth Amendment right to be free

13  from unreasonable search and seizure and his Fourteenth Amendment right to due process.

14  (FAC ¶ 47-48.)   Specifically, he alleges that he was wrongfully arrested and confined for

15  six months.  (Id. at ¶ 53.) While Plaintiff cites §1985 rather than § 1983 in the FAC, (Id. at

16  ¶ 54), the Court finds that the facts plead a claim under § 1983 for violation of Plaintiff's

17  Fourteenth Amendment rights and a claim for conspiracy to violate Plaintiff's Fourteenth

18  Amendment rights under § 1983, but only as to Deputies Rodriguez and Carrington.

19      **a.  Violation of Plaintiff's Fourth and Fourteenth Amendment Rights**

20      The FAC suggests three separate time periods during which Plaintiff's

21  constitutional rights may have been violated.  The inference from the FAC is that Plaintiff

22  was arrested *twice* on or about August 21, 2009.  First, Deputy Rodriguez arrested Plaintiff

23  when she accepted the citizen's arrest from Moorhouse.  (Id. at ¶ 17.)  Second, Deputy

24  Rodriguez "again arrested" Plaintiff after a search of his car.  (Id. at ¶ 24.)  Finally,

25  Plaintiff also alleges he was incarcerated for six months before Deputy Carrington turned

26  over the audio/video recording and the state court dismissed the burglary charge.  (Id. at ¶

27  44.)

28

5

1              1.   <u>Violation of Plaintiff's Fourth Amendment Rights</u>

2         "In order to satisfy the requirements of the Fourth Amendment, an arrest must be

3    supported by probable cause to believe that the arrestee has committed a crime." *Allen v.*

4    *City of Portland*, 73 F.3d 232, 236 (9th Cir. 1995).  "Probable cause exists when, at the

5    time of arrest, the agents know reasonably trustworthy information sufficient to warrant a

6    prudent person in believing that the accused had committed or was committing an

7    offense."  *Id.* (internal citation and quotation omitted).  "In establishing probable cause,

8    officers may not solely rely on the claim of a citizen witness that he was a victim of a

9    crime, but must independently investigate the basis of the witness' knowledge or interview

10   other witnesses."  *Arpin v. Santa Clara County Tranps. Agency*, 261 F.3d 912, 925 (9th

11   Cir. 2001).

12        Here, Plaintiff does not plead facts showing that Deputies Rodriguez and Carrington

13   lacked probable cause to arrest him.  Plaintiff admits in the FAC that he entered the

14   Property that was not his own.  (FAC ¶ 15.)  Furthermore, when Deputies Rodriguez and

15   Carrington accepted the citizen's arrest, Plaintiff was located on the Property, which

16   independently corroborated Moorhouse's story.  (Id. at ¶¶ 12-17.)   While Plaintiff denied

17   any intent to commit a crime, Deputies Rodriguez and Carrington heard Plaintiff's story

18   before accepting the citizen's arrest.  (Id. at ¶¶ 13-17.)  *Cf. Arpin*, 261 F.3d at 925 (officers

19   failed to independently investigate the citizen witness' claim of battery where they refused

20   to allow plaintiff to explain her side of the story).  Because, based on the facts pleaded by

21   Plaintiff, Deputies Rodriguez and Carrington had an independent basis to believe that

22   Plaintiff was committing a crime on the Property, they had probable cause to arrest him.

23        Plaintiff also alleges that he was "arrested again" after Deputies searched his car.

24   (FAC ¶ 24.)  Plaintiff's also admits in his Opposition that he was arrested on a drug charge

25   following the discovery of drugs in his car.  (Pl.'s Opp'n at 5.)  Taken together and

26   drawing the inference most favorable to Plaintiff, these facts show that Deputies Rodriguez

27   and Carrington had probable cause to arrest Plaintiff.  Therefore, Plaintiff does not, and in

28

1   light of the facts already pleaded, cannot plead facts sufficient to establish that either

2   arrest, to the extent they need to be analyzed separately, violated his Fourth Amendment

3   rights.    Therefore, Plaintiff's § 1983 claim for violation of his Fourth Amendment rights

4   based on lack of probable cause is dismissed with prejudice.

5                    2.   Violation of Plaintiff's Fourteenth Amendment Rights

6          Plaintiff alleges facts sufficient to establish that Defendants Rodriguez and

7   Carrington violated his Fourteenth Amendment rights by concealing exculpatory evidence

8   until the middle of his trial.  (FAC ¶¶ 48, 53.)  "[T]he loss of liberty caused by an

9   individual's mistaken incarceration after the lapse of a certain amount of time gives rise to

10  a claim under the Due Process Clause of the Fourteenth Amendment."  *Lee v. City of Los*

11  *Angeles*, 250 F.3d 668, 683 (9th Cir. 2001) (internal citation and quotation omitted).

12  Specifically, where state actors recklessly or intentionally cause the continued

13  incarceration of a person for whom there is not probable cause to maintain confinement,

14  there is a violation of the Due Process Clause.  *See id.*at 683-84. (citing cases holding that

15  the continued detention of the plaintiff where the sheriff or police officer knew or should

16  have known it was wrongful states a claim under § 1983).   This is true when officers

17  refuse to investigate available exculpatory evidence.  *Russo v. Bridgeport*, 479 F.3d 196,

18  208 (2d Cir. 2007).[4]

19         Here, Plaintiff alleges that the Defendants withheld exculpatory evidence leading to

20  six months of confinement.  The FAC and Plaintiff's Opposition generate some confusion

21  as to whether Plaintiff would have been detained for some period of time on the drug

22  charges.  However, drawing the inference most favorable to Plaintiff, the Court finds that

23  Plaintiff alleges facts that establish that he would not have been detained for six months

24

25

26    [4] The Second Circuit held that prolonged detention cases are more properly analyzed under the
      Fourth, rather than Fourteenth, Amendment.  *Id.* at 209.  However, because the Ninth Circuit in
27    *Lee* analyzed continued detention under the Fourteenth Amendment, the Court will do the same.
      250 F.3d at 683.

28

1  had Deputies Rodriguez and Carrington listed the audio/video recording in the police

2  report or otherwise turned over that evidence earlier.

3  **b.  Conspiracy to Violate Plaintiff's Constitutional Rights**

4  "To establish liability for a conspiracy in a § 1983 case, a plaintiff must

5  demonstrate the existence of an agreement or meeting of the minds to violate constitutional

6  rights." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal citations

7  and quotations omitted).  "Such an agreement need not be overt, and may be inferred on

8  the basis of circumstantial evidence such as the actions of the defendants."  *Id*.

9  Here, Plaintiff impliedly alleges that both Deputies Rodriguez and Carrington knew

10  about the exculpatory audio/video recordings because they were present when the patrol

11  car camera captured the events.  (FAC ¶¶ 18-20.)  Deputy Rodriguez failed to list the

12  evidence in her police report (Id. at ¶ 27) and Deputy Carrington approved that report (Id.

13  at ¶ 28).  Furthermore, Plaintiff alleges that Deputy Carrington executed a declaration to

14  increase Plaintiff's bail, (Id. at ¶ 32), and Deputy Rodriguez falsely testified that no one

15  from the Sheriff's Department had tried to start Plaintiff's car.  (Id. at ¶ 39.)

16  These allegations support the existence of a conspiracy between Deputies

17  Rodriguez and Carrington to violate Plaintiff's Fourteenth Amendment right to be free

18  from incarceration.  While Plaintiff does not allege that the Deputies overtly agreed to

19  violate his constitutional rights, his allegations that (1) Deputy Rodriguez prepared a report

20  excluding the audio/video recordings that Deputy Carrington approved, (2) they both knew

21  about and withheld the exculpatory evidence, (3) Deputy Carrington executed a declaration

22  in support of an increase in bail, in furtherance of the conspiracy, and (4) Deputy

23  Rodriguez testified falsely in furtherance of the conspiracy establish a "common

24  objective." *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541

25  (9th Cir. 1989).  Thus, Plaintiff states a claim for conspiracy against Deputies Rodriguez

26  and Carrington.  However, there are no allegations that any of the other Defendants knew

27  about the audio/video recording, and thus, Plaintiff fails to sufficiently state a conspiracy

28

1    claim against any other individual defendant.   Thus, as to the individual defendants other

2    than Rodriguez and Carrington, the §1983 conspiracy claim is dismissed with leave to

3    amend.

4            **c.  Qualified Immunity**

5            "In § 1983 actions, the doctrine of qualified immunity protects city officials from

6    personal liability in their individual capacities for their official conduct so long as that

7    conduct is objectively reasonable and does not violate clearly-established federal rights."

8    *Comm. House, Inc. v. City of Boise*, 623 F.3d 945, 964 (9th Cir. 2010) (internal citations

9    omitted).  Here, Plaintiff had a clearly-established right to be free from prolonged

10   detention as a result of suppression of exculpatory evidence.  *See Lee*, 250 F.3d at 683-84.

11   *See also Russo*, 479 F.3d at 211 (noting a "clearly-established constitutional right to be

12   free from prolonged detention caused by law enforcement officials' mishandling or

13   suppression of evidence in a manner which 'shocks the conscience.'")  Therefore, Deputies

14   Rodriguez and Carrington are not entitled to qualified immunity based on the allegations in

15   the FAC.

16           **d.  § 1983 Claims against Sergeant Jansen**

17           There is no respondeat superior liability under § 1983.  *Iqbal*, 129 S. Ct. at 1948.

18   Therefore, to state a claim against Sergeant Jansen, Plaintiff must allege facts which

19   establish that Sergeant Jansen personally violated his rights.  However, Sergeant Jansen is

20   only alleged to have approved the police report, which did not list the audio/video

21   recording, (FAC ¶ 29), and to have known that audio/video recordings must be preserved

22   whether listed in the police report or not (Id. at ¶ 35).  Plaintiff does not allege, however,

23   that Sergeant Jansen knew or should have known that an audio/video recording existed in

24   this case.  Accordingly, Plaintiff's § 1983 claims for violation of Plaintiff's Fourteenth

25   Amendment rights against Sergeant Jansen are dismissed without prejudice.

26           **e.  § 1983 Claims against Sheriff Hutchens**

27

28

1          Plaintiff's allegations as to Sheriff Hutchens' involvement in his arrest and

2 incarceration are minimal.  He alleges that Sheriff Hutchens vested in Sergeant Jansen the

3 authority to approve the police report.  (Id. at ¶ 29.)  He also alleges that she is responsible

4 for implementing the policy and procedures of the Sheriff's Department, including proper

5 training of deputies.  (Id. at ¶ 57.)  However, there are no allegations of her personal

6 knowledge or involvement of any of the facts in this case.  Moreover, to the extent her

7 liability is based on her failure to properly train deputies, as Plaintiff argues in his

8 Opposition, (Pl.'s Opp'n. at 6-7), Plaintiff's allegation that Deputies Rodriguez and

9 Carrington knew the Sheriff's Department policy with regard to disclosure of audio/video

10 recordings directly contradicts this argument.  (FAC ¶ 35.)  Therefore, Plaintiff's § 1983

11 claims for violation of Plaintiff's Fourteenth Amendment rights against Sheriff Hutchens

12 are dismissed without prejudice.

13                 **f.   § 1983 Claims against the Sheriff's Department**

14          A claim under § 1983 against the Sheriff's Department is improper because

15 "municipal police departments and bureaus are generally not considered 'persons' within

16 the meaning of 42 U.S.C. § 1983."  *United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir.

17 2005).  Therefore, the § 1983 claims against the Sheriff's Department are dismissed with

18 prejudice.

19                 **g.  Municipal Liability**

20       Under *Monell v. New York City Department of Social Services*, a municipality may be

21 liable under § 1983 if a plaintiff identifies a municipal policy or custom underlying its

22 employees' actions.  436 U.S. 658, 694 (1978).  The Ninth Circuit has held that "a claim of

23 municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if

24 the claim is based on nothing more than a bare allegation that the individual officers'

25 conduct conformed to official policy, custom, or practice."  *Whitaker v. Garcetti*, 486 F.3d

26 572, 581 (9th Cir. 2007).  Other district courts have noted persuasively that "[i]n light of

27 *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e.,

28

1  'bare allegations') is no longer viable."  *Young v. City of Visalia*, 687 F. Supp. 2d 1141,

2  1149 (E.D. Cal. 2009).   The Court agrees that after *Iqbal*, something more than a "bare

3  allegation" is required.

4      Here, Plaintiff's allegations of an official policy, custom, or practice are both "bare"

5  and contradictory.  First, the FAC alleges that it was the policy and procedure of the

6  County and Sheriff's Department "that all investigative reports, arrest reports and police

7  reports concerning the arrest of one accused of a crime include all items of evidence

8  concerning that alleged crime."  (FAC ¶ 56.)  Second, Plaintiff alleges a failure to properly

9  train employees to comply with policies and procedures.  (Id. at ¶ 73.)  This allegation,

10  however, directly contradicts Plaintiff's allegation that all Defendants, including Deputies

11  Rodriguez and Carrington, knew they had a duty to disclose in their police reports and turn

12  over exculpatory evidence, including audio/video recordings.  (Id. at ¶ 35.)  Because

13  Plaintiff makes such contradictory allegations, the FAC does not sufficiently identify the

14  challenged policy, custom, or practice.  *See Young*, 687 F. Supp. 2d at 1149 (holding that

15  allegations must identify the challenged policy/custom to pass muster under *Iqbal*).

16  Therefore, Plaintiff's § 1983 claims for violation of Plaintiff's Fourteenth Amendment

17  rights against the County are dismissed without prejudice.

18  **II.      State Law Claims**

19          **a.  Municipal Immunity**

20          To the extent that each of the individual Defendants is immune from state tort

21  Claims, the municipal Defendants also have immunity.  Under California Government

22  Code § 815.2, "a public entity is not liable for an injury resulting from an act or omission

23  of an employee of the public entity where the employee is immune from liability."

24  Therefore, if the individual Defendants are immune, the County and the Sheriff's

25  Department must also be immune.

26          **b.  False Imprisonment**

27

28

1    Under California law, the elements of false imprisonment are "(1) the nonconsensual,

2 intentional confinement of a person, (2) without lawful privilege, and (3) for an

3 appreciable period of time, however brief."  *Blaxland v. Commonwealth Dir. of Pub.*

4 *Prosecutions*, 323 F.3d 1198, 1205 (9th Cir. 2003). (internal citation and quotation

5 omitted).  However, a law enforcement officer who effects a lawful arrest is not liable for

6 false imprisonment under California law.  *Cervantes v. United States*, 330 F.3d 1186, 1188

7 (9th Cir. 2003).

8    Plaintiff fails to state a claim for false imprisonment based on his arrest because he

9 does not allege facts showing that his arrest was unlawful.  Deputy Rodriguez initially took

10 him into custody after accepting Moorhouse's citizen's arrest, (FAC ¶ 17), a factual

11 scenario that cannot give rise to a claim for false imprisonment under California law.

12 *Arpin*, 261 F.3d at 920-21.  When Deputy Rodriguez "again arrested" Plaintiff, she had

13 probable cause to arrest because she had discovered drugs in his car.  Therefore, Plaintiff

14 does not plead facts that establish that his initial arrest(s) were unlawful.

15     Furthermore, where a Plaintiff is wrongfully confined pursuant to an initially valid

16 arrest, the correct claim is malicious prosecution,[5] not false imprisonment.  *Collins v. City*

17 *and Cnty. of San Francisco*, 123 Cal. Rptr. 525, 528 (Cal. App. 1st 1975)  *See also Russo*,

18 479 F.3d at 204 n.8 (affirming the dismissal of false imprisonment claims under similar

19 facts and similar state law).    Therefore, Plaintiff fails to state a claim for false

20 imprisonment, and that claim is dismissed with prejudice.

21

22

23

24    [5] While malicious prosecution would appear to be the correct claim, the Court notes that all
individual Defendants here would be immune from a claim for malicious prosecution.  California

25 Government Code § 821.6 shields a public employee from liability "for injury caused by his
instituting or prosecuting any judicial or administrative proceeding within the scope of his

26 employment, even if he acts maliciously or without probable cause."  *See also Cousins v. Lockyer*,
568 F.3d 1063, 1071 (9th Cir. 2009) ("[M]alicious prosecution . . . is a claim for which

27 government officers are immune under California Government Code § 821.6).

28

1

### c.  Intentional Infliction of Emotional Distress

2          Plaintiff fails to state a claim for intentional infliction of emotional distress against

3 any of the individual Defendants because each is entitled to immunity under California

4 law.  Deputies Carrington and Rodriguez, Sergeant Jansen, and Sheriff Hutchens are all

5 immune from liability for intentional infliction of emotional distress under California

6 Government Code § 821.6.  This statute primarily applies to actions for malicious

7 prosecution, but extends to claims based on acts undertaken during the investigatory phase

8 of proceedings, including the withholding of exculpatory evidence.  *Amylou R. v. Cnty. of*

9 *Riverside*, 34 Cal.Rptr.2d 319 (Cal.App. 4th 1994); *Randle v. City and Cnty. of San*

10 *Francisco*, 230 Cal.Rptr. 901, 905-06 (Cal.App. 1st 1986).  *Cf. Blankenhorn v. City of*

11 *Orange*, 485 F.3d 463, 488 (9th Cir. 2007) (police officers not immune for acts undertaken

12 during the arrest, rather than investigation, of plaintiff).

13          Here, the operative allegations supporting Plaintiff's intentional infliction of

14 emotional distress claim against the officers are his allegedly wrongful arrest and wrongful

15 confinement brought about by officers' conspiracy to conceal exculpatory evidence,

16 Deputy Carrington's declaration in support of increased bail, and Deputy Rodriguez's

17 alleged perjury during Plaintiff's trial.  Each of these acts constitutes part of the

18 investigation into Plaintiff's guilt, even if they were done maliciously. Therefore, Deputy

19 Carrington, Deputy Rodriguez, Sergeant Jansen, and Sheriff Hutchens are immune from

20 liability for intentional infliction of emotional distress under § 821.6.  Because the

21 individual Defendants are immune, the County and Sheriff's Department are also immune.

22 Therefore, Plaintiff's intentional infliction of emotional distress claim is dismissed with

23 prejudice.

24

### d.  Negligent Infliction of Emotional Distress

25          Plaintiff fails to state a claim for negligent infliction of emotional distress against all

26 Defendants for the same reasons he fails to state a claim for intentional infliction of

27

28

1  emotional distress.  Therefore, Plaintiff's claim for negligent infliction of emotional

2  distress is dismissed with prejudice.

3
   **III.   Conclusion**
4

5
      For the foregoing reasons, Defendants' Motion is DENIED IN PART and
6
   GRANTED IN PART.
7

8
      I.      Plaintiff's § 1983 claims against the Sheriff's Department are DISMISSED
9
              WITH PREJUDICE.
10

11
      II.     Plaintiff's § 1983 claims for violation of his Fourth Amendment rights based
12
              on lack of probable cause for arrest and conspiracy to violate his Fourth
13
              Amendment rights are DISMISSED WITH PREJUDICE as to all moving
14
              Defendants.
15

16
      III.    Plaintiff's § 1983 claim for violation of his Fourteenth Amendment rights is
17
              DISMISSED WITH LEAVETO AMEND as to Sergeant Jansen, Sheriff
18
              Hutchens, and the County.
19

20
      IV.     Plaintiff's § 1983 claim for conspiracy to violate his Fourteenth Amendment
21
              rights is DISMISSED WITH LEAVE TO AMEND as to Sergeant Jansen,
22
              Sheriff Hutchens, and the County.
23

24
      V.      Plaintiff's false imprisonment claim is DISMISSED WITH PREJUDICE as
25
              to all moving Defendants.
26

27

28

1     VI.    Plaintiff's intentional infliction of emotional distress claim is DISMISSED

2           WITH PREJUDICE as to all moving Defendants.

3

4     VII.   Plaintiff's negligent infliction of emotional distress claim is DISMISSED

5           WITH PREJUDICE as to all moving Defendants.

6

7     Plaintiff may file an amended complaint consistent with this Order no later than

**October 24, 2011**.

8

9

10  DATED: <u>September 29, 2011</u>

11

12                          **<u>JOSEPHINE STATON TUCKER</u>**

13                          JOSEPHINE STATON TUCKER
                              UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28